133 N.J. Super. 151 (1975)
335 A.2d 601
IN THE MATTER OF THE ESTATE OF HELEN SAENGER.
Superior Court of New Jersey, Essex County Court, Probate Division.
February 14, 1975.
*153 Mr. Franklin C. Phifer for proponent.
Mr. Marius Grosso for Rosedale Cemetery.
YANOFF, J.C.C.
Helen Saenger died, leaving a will with the following attestation clause and signatures:
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 7th day of July, Nineteen Hundred and Fifty-four.
 Helen Saenger (LS) 
Signed, sealed, published and declared by the said Testatrix, HELEN SAENGER, to be her Last Will and Testament, in our presence, who, thereupon, at her request, and in her presence, and in the presence of each other, all being present at the same time, have hereunto subscribed our names as witnesses, this 7th day of July, Nineteen Hundred and Fifty-four.
 Nannie Johnson 151 Greenwood Ave. East Orange, N.J.
 William L. Vieser 744 Broad St. Newark, N.J. 
When the will was offered for probate, the Surrogate found doubt on the face of the will, as the result of which the matter came before me as a county judge pursuant to N.J.S.A. 3A:2-3 to 3A:2-5 and R. 4:84-1(e). If probate is denied, certain charitable gifts will fail.
The will contains the names of decedent and the witnesses, in the form indicated above. Testatrix' signature was identified by a relative who knew it well. Neither of the witnesses was produced, because William L. Vieser is dead, and Nannie Johnson cannot be located despite diligent search. William L. Vieser was an attorney. At the hearing his former law partner testified that he was "knowledgeable in the field of the execution of wills," and identified his signature. The posture of the facts is, therefore, that there is a perfect attestation clause, plus proof of the signature of one witness, and proof that search has failed to reveal the whereabouts of the other witness.
The issue in this case is stated in 5 N.J. Practice (Clapp, Wills and Administration), § 129 at 233, 234, n. 3, in a comment on Allaire v. Allaire, 37 N.J.L. 312 (Sup. Ct. 1875), aff'd 39 N.J.L. 113 (E. & A. 1876):
*154 Query whether the will may be probated by the Surrogate's Court, in such case, on proof of the signature of one witness, when the proof of the other's signature has been found unattainable after diligent search therefor.
Additionally, I have been told that until this case arose probate has been denied routinely by the surrogate because of lack of proof of the signatures of both witnesses, and that this has been the practice for a long time. It is, therefore, appropriate that I give reasons for the conclusion that the will should be admitted to probate.
N.J.S.A. 3A:3-2 sets forth the requirements for a valid will. "A literal construction of the statute with regard to the formal requisites is demanded * * * and we have no right to accept anything short of positive proof of conformity with the statutory requirements * * *." In re Hale's Will, 21 N.J. 284, 295 (1956); but note, Langbein: "Substantial Compliance with the Wills Act," 88 Harv. L. Rev. 489 (Jan. 1975). The issue here, however, is not whether there should be relaxation of proof of compliance with the statute, but whether, considered in the light of the appropriate rules of evidence and the decisions which bear on the subject, the requirement that the signatures of both attesters be proved where there is a complete attestation clause as there is here, does not present an unnecessary barrier to the probate of wills.
The problem is one of evidence, not of substance. Evid. R. 71 specifically so provides. The annotations to the rule state:
Since N.J.S. 3A:3-2 requires attestors to a will or codicil for its validity but not for its authentication, wills and codicils, as other attested writings unaffected by a specific statutory direction to contrary, may be proved by any recognized mode of authentication.
R. 4:80-2(b) provides, under the title "Proof of Will, Nonresident or Deceased Witnesses"
If both witnesses are deceased, the signature of each such witness may be proved by one person, and the same person may prove both *155 signatures. Proof of death of the attesting witness may be made by affidavit without producing certified copies of death certificates.
The rule states how signatures of deceased attesters may be proved, but it takes no position on whether proof of the signature of one attester, plus a complete attestation clause, entitles the will to probate.
The ultimate substantive question is whether testator made a will in compliance with the Wills Act. In re Hale's Will, supra, was no more than a determination that on the evidence before the Union County Court a judgment setting aside probate was correct. The problem before this court is whether on the evidence probate should be granted.
The rules as to proof required to probate a will are, in general, clear. Where there is an attestation clause which recites performance of all the requisite acts, the live testimony of one witness that he saw testator execute the will, and that thereafter he and another signed as witnesses, is sufficient. Allaire v. Allaire, supra, the case which gave rise to the query; In re Ferrulli, 105 N.J. Super. 217 (Cty. Ct. 1969); Ward v. Wilcox, 64 N.J. Eq. 303 (Prerog. 1902), aff'd 65 N.J. Eq. 397 (E. & A. 1903). The will may also be proved by the signatures of both deceased attesters. In re Will of Kirkpatrick, 22 N.J. Eq. 463 (Prerog. 1871). It may be proved with or without an attestation clause (see In re Petkos, 54 N.J. Super. 118 (App. Div. 1959), cert. den. 30 N.J. 150 (1959), and without the testimony of an attester, on adequate proof, such as that of a bystander, that testator has done everything required of him by the statute. Clapp, supra (1973 pocket parts), at 76, n. 3. Where there are no live witnesses, and the attestation clause is not perfect, the will may not be admitted to probate. In re Johnson, 115 N.J. Eq. 249 (Prerog. 1934).
The only case which I have found in this State which deals with the problem presented here is The Will of Pamela Jolly, 5 N.J. Eq. 456 (Prerog. 1846). The facts there were that Pamela Jolly left a will dated May 20, 1824, signed by *156 her mark. The will purported to have been witnessed by John Oliver, Joshua Carman, and Elizabeth Carman, but the entire writing of the will was in the hand of Elizabeth Carman, and the names John Oliver and Joshua Carman were in the same hand. It was shown that John Oliver had died before the date of the will. Both the other witnesses to the will had died before the will was offered for probate. The court had before it a letter written by testatrix, dated 1831, referring to a prior will. The court considered the possibility that the document offered for probate was a copy of the will mentioned in the letter, and was for that reason entirely in the handwriting of Elizabeth Carman, and that it might be admitted to probate. However, it rejected the theory because of lack of proof of execution. It said of the document as offered:
But there is a link wanting in the testimony. No proof of execution is to be derived from the name of "Pamela Jolly" in this case.
If Elizabeth Carman were in life, and had been produced as a witness, and had sworn that she saw Pamela Jolly execute the writing by making her mark, and that she subscribed her name as a witness to such execution, it would have been sufficient proof; or if there had been added to the writing, as it now stands, a new attestation clause, showing that it was executed in the presence of Elizabeth Carman, and her name, proved to be genuine, was subscribed thereto; proof of that signature, she being dead, might have been sufficient. [at 458; emphasis supplied]
The clear implication is that if a new attestation clause had been added to the document, proof of the signature of Elizabeth Carman, after her death, would have sufficed.
Eliot v. Eliot, 10 All. 357, 92 Mass. Rep. 357 (Sup. Jud. Ct. 1865) supports the dictum in The Will of Pamela Jolly. One of the three witnesses to the will was dead, and the other two merely identified their signatures, but did not recollect the circumstances of the execution of the will, not even the identity of the testator.[*] (Massachusetts requires *157 three witnesses to a will.) Cases of similar tenor are found in Wisconsin. In re Maresh Will, 177 Wis. 194, 187 N.W. 1009 (Sup. Ct. 1922); In re Grant's Will, 149 Wis. 330, 135 N.W. 833 (Sup. Ct. 1912). Although in these cases live witnesses were produced, their testimony was only that they recognized their signatures. This is hardly different from signature identification by a third person, where the attesters cannot be produced.
The theoretical basis for my conclusion is found in Wigmore on Evidence. An attestation clause is hearsay; its use, an exception to the hearsay rule.
What has not been always clearly understood is that such a use of an attestation is in truth an exception to the Hearsay rule, i.e. is the testimonial use of an extrajudicial assertion as evidence of the truth of the fact asserted (§ 1362, supra). In practice, the dramatic feature of the evidence has tended to obscure the legal principle: that is to say, the mode of using it consists merely in proving the genuineness of the attester's signature to the document. But this is after all nothing less than offering the attester's written statement, expressly or impliedly made at the time of execution, that the document was seen by him to be executed as it purports to be. [5 Wigmore, Evidence (Chadbourne rev. 1974), § 1505 at 105; emphasis author's]
The effect of the exception, declares Wigmore, is to prove proper execution of the will:
When the attester's signature is identified as genuine, what does the attester thereby purport to testify to?
Assuming that the signature is appended to a clause of attestation expressly stating the facts of execution, it is clear that the signed attestation is a testimonial assertion of all the facts thus required to be stated. [Id., § 1511 at 411; emphasis author's]
As to the number of witnesses to be called, Wigmore states:
Number of attesters required to be called. The object of placing more than one attestation upon a document, whether at the parties' voluntary instance or by requirement of law, is ordinarily not to demand the combined testimony of all at the trial, but merely to *158 provide by way of caution a number of witnesses; so that the contingencies of death, removal of residence, and the like, may be guarded against, and one witness at least may be expected to be available. If a statute expressly required the document to be "proved" by a specified number (§ 2048 infra), the case would be different. But a main object in statutes requiring attestation as an element of validity is to surround the act of execution with certain safeguards; the object of securing evidence for litigation is a secondary one. So far, therefore, as such an object exists, it can hardly be implied to have in view anything beyond what is above noted, i.e., a precautionary supply of persons from whom a testifier is likely to remain available in spite of the accidents that might have totally destroyed the supply if there had been but one person provided in advance.
No doubt, statutes often negative the above view by expressly providing not only that a certain number shall attest, but also that all of the required number shall be called to testify. But in the absence of express provision, such a requirement is not properly to be implied; and it was not implied in common law practice:

* * *
For attested documents in general, the rule has always been that but one attester need be called. For wills, the rule was clearly the same in the common law courts. [5 Wigmore, op. cit., § 1304 at 727-728 emphasis author's]
The attestation clause in this case describes compliance with all the statutory requirements for the execution of a will. Such a clause is prima facie evidence of due execution. Mundy v. Mundy, 15 N.J. Eq. 290 (Prerog. 1858); In re Will of Alpaugh, 23 N.J. Eq. 507 (Prerog. 1872); Allaire v. Allaire, supra; Beggans Case, 68 N.J. Eq. 572 (Prerog. 1905); see In re Hale, supra. This is true even though the testimony of the attesting witnesses do not confirm the attestation clause. Alpaugh, supra. An example of the application of this rule is In re DuBois, 9 N.J. Super. 280 (App. Div. 1950), cert. den. 6 N.J. 232 (1951), in which there was a perfect attestation clause and in which the live testimony of the witnesses eight years later was vague and in some respects at variance with the statements in the attestation clause. The court, nevertheless, admitted the will to probate and said:
*159 The attestation clause is now accepted as "a most important element of proof" and the derivative presumption is deemed impregnable unless it is devastated by "strong and convincing evidence." [at 284]
Another such case is James v. Wendehack, 1 N.J. Super. 203 (App. Div. 1949), cert. den. 1 N.J. 603 (1949). There the will was attacked on the ground that the attesting witnesses had signed before the testator. At trial one of the attesting witnesses testified that the testator had signed first, and another testified that the witnesses had signed first. The trial judge found as a fact that the witnesses had signed first. The Appellate Division reversed because of the force of the attestation clause. Speaking for the court, Judge (now Justice) Jacobs said:
Although our courts have, from time to time, used varying language as to the exact force of the attestation clause (see 5 Wigmore, Evidence (3d Ed. 1940) Sec. 1511, 335) they have, since early times, recognized that sound public policy requires that a will bearing the signature of the testator and the signatures of the attesting witnesses with a complete attestation clause should not be upset for alleged deficiency in its execution except upon clear evidence. [at 206, 207]
When a witness who signed an attestation clause is called to the stand to prove a will, in the usual case, where there are no issues of undue influence or competency, his testimony is no more than a vocal repetition of the attestation clause. Indeed, all that is needed is "some declaration by the testator that it is his will, and a communication by him to the witnesses that he desires them to attest it as such." Mundy v. Mundy, supra, 15 N.J. Eq. at 293-294 (emphasis supplied); In re Petkos, supra. The will is admitted to probate because the testimony proves that testator did indeed comply with the Wills Act by signing and declaring his will in the presence of two witnesses, who subscribed their names as witness in the testator's presence. In this case proof of Vieser's signature carried with it proof that Vieser saw Nannie Johnson sign. In fact, it may be inferred that she signed before him because her signature appears first. It shows also *160 that there was compliance with all other requirements of the Wills Act. Since it is the law, as indicated by Wigmore, § 1511, supra, that "the signed attestation is a testimonial assertive of all of the facts thus required to be stated," identification of one attester's signature, where both attesters are not available, is proof that testator did what he was required to do to make a will, including proof that two witnesses were present when he affixed his signature to the document. To hold to contrary would be to diminish the traditional force of the attestation clause. In the words of Judge Conford in In re Petkos, supra at 124 of 54 N.J. Super. it would "come close to substituting a fetish for a rule of reason." If the attestation clause prevails against defect in memory, as in Mundy v. Mundy, supra, or contradictory testimony of one of the attesters, as in James v. Wendehack, supra, and In re Seymour's Will, 114 A. 799 (Prerog. 1921) (not reported in official reports), it is difficult to conceive why it should not have its customary effect where there is no contradiction at all.
Tangently significant in connection with this ruling, although not essential to it, is the fact that there have been important developments in the Law of Evidence since In re Hale's Will, supra. The New Jersey Rules of Evidence became effective by statute July 1, 1960 (L. 1960, c. 52) and by court rules September 11, 1967 subsequent to that decision. Evid. R. 63(32), eased considerably restrictions on proof of statements by "declarants unavailable at trial because of their death" (Comment 1972 Edition New Jersey Rules of Evidence, at 286). The rule provides:
"Subject to Rule 64, in a civil proceeding, a statement made by a person unavailable as a witness because of his death is admissible if the statement was made in good faith, upon the personal knowledge of the declarant, and there is a probability from the circumstances that the statement is trustworthy."
Pursuant thereto, the letters of a testator were admitted in evidence to establish his testamentary intent. In re Estate of *161 Cory, 98 N.J. Super. 208 (Ch. Div. 1967). In similar litigation the oral statements of a decedent were admitted for the same purpose. Woll v. Dugas, 104 N.J. Super. 586 (Ch. Div. 1969), aff. 112 N.J. Super. 366 (App. Div. 1970). It does not impair the principle that there must be rigid adherence to the requirement of the Wills Act to take this development into account. It would be incongruous to permit the use of hearsay evidence to prove the meaning of a will, while at the same time denying its use to prove the execution of a will.
There are two additional facts which support admission of this will to probate; although in my view what has already been said is sufficient to justify probate. The first is that Vieser was an attorney versed in the law of wills. In some jurisdictions this gives rise to a presumption that "the execution was properly accomplished, especially after a lapse of years." 3 Page on Wills (Bowe-Parker ed. 1961) § 29.25. The second is that the signature of the testatrix was proved. In re Will of Kirkpatrick, supra at 464 of 22 N.J. Eq., this was stated to be an important factor. To the same effect, see 5 Wigmore, op. cit., § 1513.
NOTES
[*] The will was admitted to probate.