REXFORD GARDNER ET AL. *v.* DOROTHY BALBONI,
ADMINISTRATRIX (ESTATE OF CLARA GARDNER), ET AL.

BERTHA MASERA ET AL. *v.* DOROTHY BALBONI,
ADMINISTRATRIX (ESTATE OF CLARA GARDNER), ET AL.
(14162)

SHEA, GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued January 18—decision released March 26, 1991

*Michael S. Schenker* and *Kevin Deneen,* for the appellants (plaintiffs).

*Pamela J. Norley,* with whom, on the brief, was *James K. Robertson, Jr.,* for the appellee (defendant Damon Runyon-Walter Winchell Cancer Fund).

SHEA, J. The appellants, Rexford Gardner, Bertha Masera, Dorothy Dowd and Wanda DiGiacomo (hereinafter plaintiffs), are the heirs at law (first cousins) of the decedent Clara Gardner. The appellee, Damon Runyon-Walter Winchell Cancer Fund (hereinafter proponent), would be the primary beneficiary of Gardner's estate if a document purporting to be her will is admitted to probate. The document, prepared apparently without advice of counsel, contains irregularities. The plaintiffs claim there was insufficient evidence that the will's execution met statutory requirements to outweigh the negative inference raised by the will's irregularities. We hold, however, that because statements in an attestation clause signed by deceased witnesses are admissible to prove due execution of a will, there was sufficient evidence for the trial court to admit the will to probate.

The trial court found the following facts. Clara Gardner died on November 26, 1985. The Probate Court appointed Dorothy Balboni as the administratrix of her estate.[1]

---

[1] Dorothy Balboni is the daughter of Bertha Masera, a close friend and cousin of the testatrix. Masera died before trial.

On January 17, 1986, Balboni, her husband, detective Thomas Murkowicz and attorney William Leary conducted a search of Gardner's apartment. Murkowicz found a document purporting to be Gardner's will in a cardboard box containing insurance and pension papers. This document was offered for probate on February 4, 1986, by the Damon Runyon-Walter Winchell Cancer Fund, the residuary beneficiary named in the document.[2] After a hearing, the Probate Court admitted the will to probate on June 12, 1987. Gardner's heirs at law, Rexford Gardner, Wanda DiGiacomo, Dorothy Dowd[3] and Bertha Masera filed two separate appeals from probate, later consolidated and heard as companion cases. If the will is admitted to probate, the heirs at law receive almost nothing;[4] the total value of the estate is estimated at $325,000.[5]

---

[2] The document named the Walter Winchell Cancer Fund, which subsequently changed its name to the Damon Runyon-Walter Winchell Cancer Fund.

[3] Dorothy Dowd died before trial and her executor, Donald Dowd, was substituted for her as plaintiff.

[4] Two of the plaintiffs, Rexford Gardner and Wanda DiGiacomo, first cousins of the testatrix, are not named in the will, although the testatrix knew them. The record does not indicate whether either held any derivative interest in any legacy bestowed by the will. Such an interest is unlikely. See General Statutes § 45a-441 (entitled "Death of devisee or legatee"). The other two plaintiffs, Bertha Masera and Dorothy Dowd, also first cousins of the testatrix, are mentioned in the will. The testatrix left her personal belongings to Dorothy Dowd. She also named Dowd her executrix and set her fee at $2000. Dowd declined to serve as executrix and, in fact, died before trial. The testatrix noted in the will that she had made Bertha Masera and "Mrs. Charles Dowd" the beneficiaries of separate life insurance policies, but she left no legacy to Masera.

[5] Rose Noacco, a friend of the testatrix, testified that the deceased, a retired stenographer, was very "economical." Unfortunately, her strong self-reliance and frugality apparently led her to prepare her own will without the aid of a lawyer. "[T]he instant case is an excellent example of the trouble, litigation and expense flowing from attempts of a layman to execute, or supervise the execution of, a will without competent, informed, legal assistance." *Wheat* v. *Wheat,* 156 Conn. 575, 583 n.5, 244 A.2d 359 (1968).

The trial court described the relevant portions of the purported will in part as follows.[6] "This document is typewritten on a standard [Cleaveland] Legal Blank will form which consists of four pages on one sheet of paper folded at the center. . . . The first page of the document contains the dispositive clauses. The second page, i.e., the back of the first page, is blank. The third page contains the printed format for the appointment of the Executor, the execution by the Testatrix, the attestation clause and a self-proving affidavit with provision for typing of the names of the witnesses, a place for their signatures and a place for an affidavit to be taken by another person.

"In the appointment clause the blanks are properly filled in and the Testatrix has appointed her cousin, Mrs. Dorothy Dowd from the town of Windsor Locks, Connecticut, County of Hartford, Connecticut, Executrix.

"The next printed section is the execution clause, i.e., that which begins with 'IN WITNESS WHEREOF', in heavy type followed in lower case print by 'I have hereunto set my hand and seal at said (blank) on the (blank) day of (blank) A.D., One Thousand, Nine Hundred and (blank).' Below this is a dotted line for signature, with the word SEAL in brackets, i.e., [SEAL]. None of the blanks in this section have been filled in nor does it contain the signature of Clara Gardner.

"In the attestation clause which contains the usual language, 'Signed, Sealed, Published and Declared by the said (blank) as and for her Last Will and Testament, in the presence of us, who at her request, in her presence, and in the presence of each other have hereunto subscribed our names as witnesses, on the 31st day of

---

[6] The disputed portions of the will are reproduced as an appendix to this opinion.

July A.D. 1956,' the name of the Testatrix has not been typed in. However, the blanks have been typed in with the word 'her' before Last Will and testament and before request and before presence and also the date, '31st', 'July', '56'. Under the label 'Witnesses' appear three handwritten signatures in blue ink, and under 'Addresses', opposite each name, is a handwritten address.

"The heading of the self-proving affidavit containing the county and the date of July 31st, A.D. 1956, has been filled in. However, the spaces where the names of the witnesses would normally appear have not been filled in, but each of the pronouns, the suffix 'trix' and the date, 31st day of July 1956 which appear in the text of the affidavit, have been filled in with a typewriter. Under this affidavit appear three dotted lines on which, normally, the signature of the witnesses would appear. On the uppermost of these three lines appears the name, handwritten in blue ink, 'Clara Gardner.' The last portion of the self-proving affidavit, that which contains the notarization, is completely blank.

"To sum up, the section for the execution of the will by the Testatrix is blank. In the attestation clause, where the name of the Testatrix would normally have been typed in, it is blank. The balance of the attestation clause, however, has been filled in with the correct pronouns, dated and three signatures. The dates of the self-providing affidavit and suffix 'trix' and the pronouns have been filled in and the signature 'Clara Gardner' appears where the names of the witnesses would normally be typed in.

"The fourth page of this document which contains some printed matter identifying the document with provision for dates and the date admitted to Probate, etc., has been left blank."

# I

An appeal from probate is not so much an "appeal" as a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court's jurisdictional limitations. *Kerin* v. *Stangle,* 209 Conn. 260, 264, 550 A.2d 1069 (1988); *Baskin's Appeal from Probate,* 194 Conn. 635, 641, 484 A.2d 934 (1984); *Prince* v. *Sheffield,* 158 Conn. 286, 298, 259 A.2d 621 (1969); see *D'Agostino* v. *Amarante,* 172 Conn. 529, 530, 375 A.2d 1013 (1972). Although the Superior Court may not consider events transpiring after the Probate Court hearing; *Satti* v. *Rago,* 186 Conn. 360, 369, 441 A.2d 615 (1982); it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered. See *Baskin's Appeal from Probate,* supra; *Stevens' Appeal,* 157 Conn. 576, 581, 255 A.2d 632 (1969).

At the trial de novo, a will's proponent retains the burden of proving, by a preponderance of the evidence, that the will was executed in the manner required by statute. *D'Agostino* v. *Amarante,* supra; *Wheat* v. *Wheat,* 156 Conn. 575, 581–82, 244 A.2d 359 (1968). The proponent must prove anew that the will's execution was in compliance with the statute in effect at the time it was executed.[7] *Lane's Appeal from Probate,* 57 Conn. 182, 187–88, 17 A. 926 (1889). To be valid, Gardner's will must comply strictly with the requirements of this statute. *Wheat* v. *Wheat,* supra, 580. Because the offer for probate of a putative will is in essence a proceeding in rem the object of which is a decree establishing a will's validity against all the world; *Estate of*

---

[7] In the present case, the statute in effect at the time of execution required *three* attesting witnesses, while the statute in effect at the time of trial required only *two* attesting witnesses. Compare General Statutes (1949 Rev.) § 45-161 with General Statutes (Rev. to 1989) § 45-161 (now renumbered § 45a-251).

*Neubauer,* 49 Cal. 2d 740, 745, 321 P.2d 741 (1958); *State* v. *McGlynn,* 20 Cal. 233, 240 (1862); *Barrette* v. *Whitney,* 36 Utah 574, 581, 106 P. 522 (1909); *Will of . Dardis,* 135 Wis. 457, 461, 115 N.W. 332 (1908); see also *Fortune* v. *Buck,* 23 Conn. 1, 8 (1854); the proponent must at least make out a prima facia case that all statutory criteria have been satisfied even when compliance with those criteria has not been contested. *Berkeley* v. *Berkeley,* 152 Conn. 398, 401, 207 A.2d 579 (1965).

Our task, then, in reviewing the judgment below, is to determine whether there was sufficient factual evidence to support the trial court's conclusion that the will was executed in strict compliance with the statutory requirements, and whether the trial court applied the law correctly in reaching that conclusion.

## II

In 1956, § 6951 of the General Statutes, now renumbered § 45a-251, provided in pertinent part: "No will or codicil shall be valid to pass any estate unless it be in writing, subscribed by the testator and attested by three witnesses, each of them subscribing in his presence . . . ." General Statutes (1949 Rev.) § 6951. Unquestionably, the purported will was in writing. The plaintiffs challenge first, therefore, the trial court's conclusion that the purported will had been "subscribed by" the testatrix. The plaintiffs contend that because Clara Gardner signed the will below the unsigned self-proving affidavit, instead of signing it immediately below the execution clause, she did not "subscribe" the will as required by the statute.

The requirement that the testator "subscribe" the will means that it must be "signed at the end" by the testator. *Wheat* v. *Wheat,* supra, 581. There was ample evidence at trial to support the trial court's conclusion

that the signature was indeed Clara Gardner's, and the plaintiffs do not challenge the signature's authenticity. They claim instead that she did not sign *at* the end of her will, but rather *after* the end of her will, because the signature appears after the self-proving affidavit and attestation clauses, technically not parts of her will. The plaintiffs cite several cases from other states in support of this proposition. *Sears* v. *Sears,* 77 Ohio St. 104, 82 N.E. 1067 (1907); *Weiss Estate,* 444 Pa. 126, 279 A.2d 189 (1972); *In re Churchill's Estate,* 260 Pa. 94, 103 A. 533 (1918); *Orrell* v. *Cochran,* 695 S.W.2d 552 (Tex. 1958).

While the plaintiffs' position is not without support, numerous other states have reached the opposite conclusion, that nondispositive provisions intervening between the dispositive clauses of the will and the testator's signature do not affect the validity of the instrument although the applicable statute requires that the signature be "at the end." See, e.g., *Owens* v. *Douglas,* 121 Ark. 448, 452, 181 S.W. 896 (1915); see also annot., 44 A.L.R.3d 745, 746 § 22; 79 Am. Jur. 2d, Wills 448 n.54, § 238, and cases cited therein. Thus, numerous courts have held specifically that a signature appearing in or after the attestation clause meets the statutory requirement that the testator subscribe or sign at the end or foot of the will. See, e.g., *McCue* v. *Turner,* 252 Ky. 849, 68 S.W.2d 415 (1934); *Lucas* v. *Brown,* 187 Ky. 502, 219 S.W. 796 (1920); *Younger* v. *Duffie,* 94 N.Y. 535 (1884); *Coplin* v. *Anderson,* 281 P.2d 186 (Okla. 1955); *In re Estate of Mills,* 414 Pa. 385, 200 A.2d 284 (1964); *Gale* v. *Freeman,* 153 Wis. 337, 141 N.W. 226 (1913) (signature appearing after attestation clause); see also *Estate of Tonneson,* 81 Cal. App. 2d 703, 185 P.2d 78 (1947); *In re Alleged Will of Drake,* 15 N.J. Misc. 484, 192 A. 428 (1937); *Matter of Eyett,* 124 Misc. 523, 209 N.Y.S. 251, (1925); *Matter of Noon,*

31 Misc. 420, 65 N.Y.S. 568 (1900) (signature within attestation clause); see generally 2 W. Page, Wills (Bowe-Parker Rev. 1966) § 19.58; annot., 44 A.L.R.3d 735 § 15 [b].

Originally, "[a]t common law, if a person wrote his name in the body of a will or contract with intent to execute it in that manner, the signature so written was as valid as though subscribed at the end of the instrument." *Matter of Will of Booth,* 127 N.Y. 109, 114, 27 N.E. 826 (1891). The purpose of the requirement that the testator sign "at the end" "is not only that it may thereby appear on the face of the instrument that the testamentary purpose which is expressed therein is a completed act, but also to prevent any opportunity for fraudulent or other interpolations between the written matter and the signature." *Estate of Seaman,* 146 Cal. 455, 462–63, 80 P. 700 (1905) (holding invalid a will subscribed by the testator on a loose page following the page containing the attestation clause).

In this case, unlike *Estate of Seaman,* supra, the attestation clause, unexecuted self-proving affidavit, and signature that follows all appear at the end of the same single, folded sheet of paper entitled "Last Will and Testament." Thus, while it is certainly true that the self-proving affidavit and the attestation clause are not parts of the testatrix's "will," their intervening presence does not suggest an incomplete expression of the testamentary purpose, nor the presence of counterfeit dispositions. More importantly, our statute does not require the testatrix to sign *at* the end of the will, but to *subscribe* it, "[l]iterally to write underneath." Black's Law Dictionary (5th Ed. 1979) p. 1279. Rejecting the testatrix's signature as a valid subscription of the will would elevate form over substance in a manner not contemplated by our rule of strict compliance with the wills act.

## III

The plaintiffs' next two claims are addressed to the sufficiency of the evidence. The plaintiffs claim that the proponent was required to prove, by a preponderance of the evidence: (1) that the testatrix had already signed the will before the witnesses attested to it;[8] and (2) that three witnesses attested to the execution of the will. They argue that there was simply no evidence that these requirements were fulfilled, and that because the proponent held the burden of proof, the will cannot be admitted to probate without such evidence.

In most cases, a properly executed "self-proving" affidavit provides a Probate Court with the attesting

---

[8] The requirement that the testator sign the will before the attesters do so is a judicial gloss upon the word "subscribed" in General Statutes § 45a-251. See *Wheat* v. *Wheat,* 156 Conn. 575, 585, 244 A.2d 359 (1968). It derives more logically, however, from the third statutory requirement, namely, that the *will* be "attested by three witnesses." General Statutes (1949 Rev.) § 6951. "Attestation is required in order that the attesting witnesses can testify to those things essential under our statutes for admission of the will to probate." *Wheat* v. *Wheat,* supra, 583; see also *Canada's Appeal from Probate,* 47 Conn. 450, 461 (1880). One cannot witness an act not yet performed. Thus, although "it is the will that must be attested, not the signature"; *Wheat* v. *Wheat,* supra, 583; and although witnesses need see neither the testator's signature nor his act in signing it; *Pope* v. *Rogers,* 93 Conn. 53, 55, 104 A. 241 (1918); in practical effect, the attestation requirement necessitates that the testator sign first. When all the signing takes place as a single event so that for all practical purposes the signing is simultaneous, the law recognizes the signatures as appropriately ordered, even though the witnesses in fact have signed first. *O'Brien* v. *Galagher,* 25 Conn. 229 (1856). No extraneous evidence was introduced to demonstrate that the signing took place as a single event, which would excuse the proponent from proving that the signatures were affixed in the appropriate chronological order. In addition, the plaintiffs suggest that the placement of the testatrix's signature below the witnesses' is uncontroverted prima facie evidence that they signed before she did. We need not consider this issue, however, because the attestation clause, which we hold to be admissible, provides evidence from which the trial court could reasonably have concluded either that the testatrix signed before the attesting witnesses, or that the signing was accomplished as a single event.

witnesses' sworn testimony that all statutory require-
ments have been met. General Statutes § 45-166; see,
e.g., *Vivian's Appeal from Probate,* 74 Conn. 257, 50
A. 797 (1901). The blank form used by the testatrix
included the text of such an affidavit. Her witnesses
did not, however, execute the affidavit. In the absence
of a self-proving affidavit, a will's proponent usually
produces extrinsic evidence of the will's due execution,
such as the live or deposition testimony of subscribing
witnesses or other persons who witnessed the will's
execution without themselves attesting to it. Here, all
of the attesting witnesses were dead, and no testimony
of bystander witnesses was offered.

The proponent repeatedly attempted to enter into
evidence the statements in the attestation clause as evi-
dence of the will's proper execution. The attestation
clause stated: "Signed, sealed, published and declared
by the said [Clara Gardner] as and for her Last Will
and Testament, in the presence of us, who at her
request, in her presence, and in the presence of each
other have hereunto subscribed our names as witnesses,
on the 31st day of July A.D. 1956."[9] Thus, if admissi-
ble, the attestation clause would provide evidence of
each element of due execution challenged by the plain-
tiffs.

The plaintiffs objected that these statements were
inadmissible hearsay. In response, the proponent
argued that their presence in the will fell within the

___

[9] The attestation clause fails to include the testatrix's name. This omis-
sion is insignificant. The witnesses' signatures appear on the same sheet
of paper (although on a different page) that states: "I, Clara Gardner . . .
do hereby make, publish and declare this to be my last Will and Testament";
the attestation clause refers to "her" last will and testament; and the sig-
nature "Clara Gardner" is on the same side of the paper as the witnesses'
signatures. Taken together, these facts are sufficient evidence from which
the trial court could infer that the word "her" in the attestation clause
referred to the testator.

ancient documents exception to the hearsay rule or within the exception provided in General Statutes § 52-172, the "dead man's statute." The trial court rejected both arguments by way of written notices mailed to counsel after the first day of trial had concluded. The court did, however, admit into evidence a copy of the purported will, not for the truth of the matters asserted therein, but simply as a copy of the document in dispute.

On the second day of trial, which took place two months after the first day, the proponent produced no additional evidence, but argued that the attestation clause was admissible under a common law exception to the hearsay rule. The trial court did not then rule on this argument, but the memorandum of decision shows that it considered the statements made in the attestation clause as admitted into evidence on that basis.

It is well established at common law that when all of the attesting witnesses to a will are dead, proof of the genuineness of all their signatures and of the testator's signature is evidence of the truth of the statements in the attestation clause. See 3 J. Alexander, Commentaries on Wills § 1302, pp. 2006–2007; 2 J. Alexander, supra, § 587; 3 W. Page, Wills (Bowe-Parker Rev.) §§ 29.21, 29.23; 1 I. Redfield, Wills (3d Ed.) c. vi, § 19, p. 216; 1 H. Underhill, Wills § 210; annot., 76 A.L.R. 617 (1932). This rule also applies where the witnesses are not dead, but simply "unavailable," that is, absent from the court's jurisdiction; see, e.g., *Estate of Connelly,* 138 Mont. 153, 355 P.2d 145 (1960); see also 3 J. Alexander, supra, § 1302, pp. 2006–2007; 80 Am. Jur. 2d, Wills § 1015, and cases cited therein; or unable to remember the facts to which they attested. See, e.g., *Walpole* v. *Lewis,* 254 Ark. 89, 92, 492 S.W.2d 410 (1973); *In re Estate of Carroll,* 192

Ill. App. 3d 202, 548 N.E.2d 650 (1989); *Barnes* v. *Barnes,* 66 Me. 286, 297 (1876); *Eliot* v. *Eliot,* 92 Mass. 357 (1865); *Estate of Connelly,* supra; *Hobbs* v. *Mahoney,* 478 P.2d 956 (Okla. 1976); *Seydler* v. *Baumgarten,* 294 S.W.2d 467 (Tex. Civ. App. 1956). Many jurisdictions go further, and find that proof of the signatures of witnesses and testator is evidence of all the elements of due execution even where there is no attestation clause at all. See, e.g., *Glenn* v. *Mann,* 234 Ga. 194, 214 S.E.2d 911 (1975); *Succession of Augustus,* 441 So. 2d 730 (La. 1983) (applying law of District of Columbia); *Eliot* v. *Eliot,* supra; *Christopher Fry's Will,* 2 R.I. 88 (1852). In some states, an attestation clause is more than simply evidence; it creates a strong legal presumption of due execution. See, e.g., *Lamb* v. *Bryan,* 236 Ga. 237, 238, 223 S.E.2d 122 (1976); *O'Neal* v. *Jennings,* 53 Md. App. 604, 608, 455 A.2d 66 (1983); *Matter of Estate of Yenei,* 132 App. Div. 2d 870, 518 N.Y.S.2d 219 (1987). In such states, even when attesting witnesses testifying at trial contradict the statements contained in the attestation clause, courts are skeptical of their change of heart and may admit a will to probate on the strength of the contradicted attestation clause alone. See, e.g., *Massey* v. *Reynolds,* 213 Ala. 178, 183, 104 So. 494 (1925); cf. *London* v. *Harris,* 507 So. 2d 468 (Ala. 1987).

The court admitted the death certificate of each attesting witness into evidence and heard testimony by Rose Noacco, a friend of the testatrix,[10] who recognized the signatures of the testatrix and two of the attesting witnesses. Noacco did not recognize the signature of the third attesting witness, Christine Lynch, but knew her as "a dear friend of Clara's," and knew that she had lived on Townley Street in Hartford, the address written next to the signature, at the time the will was dated. The proponent offered no evidence that Christine Lynch's signature was genuine.

---

[10] Rose Noacco is also the beneficiary of $500 under the terms of the will.

Thus, the usual formulation of the common law exception does not match the circumstances of this case. There is no proof that the signature of the third witness, Christine Lynch, is genuine. She cannot speak beyond the grave to testify that she witnessed the testatrix's will. We must decide whether the post-mortem utterances of the other two witnesses, that the will was "[s]igned, sealed, published and declared by the said [Clara Gardner] . . . in the presence of *us,* who at her request, in her presence, and in the presence of each other have hereunto *subscribed our names* as *witnesses,"* (emphasis added), can substitute for proof of the authenticity of Lynch's signature and allow the statements in the attestation clause to prove due execution of the will. We must, therefore, examine the basis for the standard common law exception and determine whether it is applicable to the facts of this case.

Professor Wigmore explains the underlying justification for the exception, at the same time implying that the authentic signature of one witness may be enough to prove due execution. "It has long been unquestioned that the attestation of an attesting or subscribing witness to a document may be used, when the attester is unavailable in person, as evidence of the document's execution . . . . What has not been always clearly understood is that such a use of an attestation is in truth an *exception to the hearsay rule,* i.e., is the testimonial use of an extrajudicial assertion as evidence of the truth of the fact asserted . . . ." (Emphasis in original.) 5 J. Wigmore, Evidence (4th Ed. Chadbourn) § 1505. The exception is permitted because of necessity; 5 J. Wigmore, supra, § 1506; and because there exist circumstantial guarantees of trustworthiness: "(1) The occasion is a formal one, and the statement requires a writing; and there is commonly a radical disinclination to take part in a false transaction of such a sort. (2)

The concoction of a false document will either fix an innocent party with a false obligation or will divest legitimate heirs of their rights, and there is a natural repugnance to giving assistance in such a wrong. (3) The making of a false attestation, whether or not it is in criminal law a forgery or a perjury, is popularly supposed to be such, and the attester would probably be at least an accomplice in a forgery; so that the subjective sanction deterring from a crime would probably operate to prevent a false attestation. (4) The attester knows that he is liable at any time to be called upon in court to substantiate his attestation; and not only is his falsity likely there to be exposed by the opponent's witnesses, but he will there be obliged either to commit perjury by swearing to the fact of execution or to undergo the disagreeable ordeal of recanting and confessing his falseness." 5 J. Wigmore, supra, § 1508.

"Assuming that the signature is appended to a *clause of attestation* expressly stating the facts of execution, it is clear that the signed attestation is a *testimonial assertion of all the facts thus required to be stated.*" (Emphasis in original.) 5 J. Wigmore, supra, § 1511. Logically, then, if any single living attesting witness may prove due execution, including the attestation of the others; *Shulman* v. *Shulman,* 150 Conn. 651, 656, 193 A.2d 525 (1963); then any single deceased witness may, by signing an attestation clause, prove due execution, including the attestation of the other deceased witnesses.

A few cases take the logical step indicated by Wigmore. See, e.g., *In re Peverett,* [1902] L.R.-P. 205 (1902) (Great Britain).[11] The New Jersey Superior Court,

[11] In that case, applying the British policy then favoring testamentary dispositions, the court admitted a will to probate where there was no attestation clause, the two attesting witnesses were deceased, and one of the witnesses' signatures was not proven genuine.

which, like Connecticut; *Hatheway* v. *Smith,* 79 Conn. 506, 65 A. 1058 (1907); requires strict compliance with its statute of wills; *In re Hale's Will,* 21 N.J. 284, 295, 121 A.2d 511 (1956); has considered a situation quite similar to the one now before us. *In re Estate of Saenger,* 133 N.J. Super. 151, 335 A.2d 601 (1975). In that case, one of the two required witnesses was deceased, and the other could not be located. The deceased witness' signature was identified as authentic, but there was no evidence of the authenticity of the other's signature. The court observed that the usual formulation of the common law exception, as applied in prior New Jersey case law, did not, as here, fit the facts of the case. Id., 155.

The New Jersey court then noted, first: "Where there is an attestation clause which recites performance of all the requisite acts, the live testimony of one witness that he saw [the] testator execute the will, and that thereafter he and another signed as witnesses, is sufficient." Id. This is also a correct statement of Connecticut law. *Shulman* v. *Shulman,* supra; *Field's Appeal from Probate,* 36 Conn. 277, 279 (1869). Applying Wigmore's analysis, the court went on to conclude: "Since it is the law, as indicated by Wigmore, § 1511, supra, that 'the signed attestation is a testimonial assertive of all of the facts thus required to be stated,' identification of one attester's signature, where both attesters are not available, is proof that [the] testator did what he was required to do to make a will, including proof that two witnesses were present when he affixed his signature to the document. To hold to [the] contrary would be to diminish the traditional force of the attestation clause. In the words of Judge Conford in *In re Petkos,* [54 N.J. Super. 118, 124, 148 A.2d 320, cert. denied, 30 N.J. 150, 152 A.2d 170 (1959)], it would 'come close to substituting a fetish for a rule of reason.' If the attestation clause prevails against [a] defect

in memory, as in *Mundy* v. *Mundy,* [15 N.J. Eq. 290 (1858),] or contradictory testimony of one of the attesters, as in *James* v. *Wendehack,* [1 N.J. Super. 203, 63 A.2d 710, cert. denied, 1 N.J. 603 (1949),] and *In re Seymour's Will,* 114 A. 799 ([N.J. Prerog.] 1921) (not reported in official reports), it is difficult to conceive why it should not have its customary effect where there is no contradiction at all." *In re Estate of Saenger,* supra, 160.[12]

This court has itself recognized the logic of permitting one attester's signature to prove all the elements of execution, including the attestation of the other witnesses. In *Jarboe* v. *Home Bank & Trust Co.,* 91 Conn. 265, 99 A. 563 (1917), we upheld the probate of a will based on evidence similar to that herein presented, but on the basis of the "ancient documents" exception to the hearsay rule. We commented in passing, however: "Thus, the recitals in the attestation clause appearing over the signature of the witness might in such cases, upon proof of the authenticity of the signatures of one of the witnesses, be accepted as that witness's statement, admissible, under an exception to the hearsay rule, of the facts recited in the attestation clause and therefore as proof of the fact of due execution." Id., 270-71; see G. Wilhelm, Connecticut Estates Practice (Rev. Ed. 1974) § 45.

We are persuaded that the common law exception to the hearsay rule exists in Connecticut and that the attestation of a single deceased witness whose signa-

---

[12] The New Jersey Superior Court noted that Rule 63 (32) of the New Jersey Rules of Evidence, enacted after the will's execution but prior to trial, provides a "catch-all" exception for statements made by deceased witnesses where there are circumstantial guarantees of trustworthiness. *In re Estate of Saenger,* 133 N.J. Super. 151, 160, 335 A.2d 601 (1975). It further noted that one witness was an attorney and that the testator's signature had been independently proved to be genuine. Id., 161. It did not, however, base its decision upon these facts.

ture has been authenticated is admissible to prove that the statutory requirements recited in the attestation clause have been met, including the attestations of other witnesses whose signatures have not been authenticated. To hold otherwise would in effect punish the testatrix for outliving her witnesses.

The attestation clause recited that the testatrix subscribed the will in the witnesses' presence and that each attested to the will in the presence of the other. The trial court was entitled to rely upon these recitations as evidence proving compliance with the statutory requirements.

The judgment is affirmed.

In this opinion the other justices concurred.

*(See Appendix on following page.)*

238

# Appendix

I-Appoint my cousin ..rs. Dorethy Dowd

of the Town of Windsor Locks, Conn.    County of   Hartford, Conn.

and State of   xxartfxrdx Connecticut    executrix  of this my last Will and Testament,

**In Witness Whereof,**  I have hereunto set my hand and seal at said

on the     day of      A. D., One Thousand, Nine Hundred and

.... . .. .. ... ... .... . . . .   [Seal]

Signed, sealed, published and declared by the said
as and for **her** Last Will and Testament, in the presence of us, who at **her** request, in h **er** presence,
and in the presence of each other have hereunto subscribed our names as witnesses, on the  **31st**  day

of  **July**      A D. 19 **56**

| *Witnesses* | *Addresses* |
|---|---|
| N. M. Hemingway | 12 Highland St. Manchester Ct. |
| Mr. R. Lapointe | 161 Lexington Dr. Hartford |
| Christine M. Lynch | 30 Townley St., Hartford Conn. |

State of Connecticut,     } ss.         July 31   A D., 19 56

County of  Hartford

We the within named

being duly sworn, make affidavit and say: That we severally attested the within and foregoing Will of
the within named testat **rix** and subscribed the same in **her** presence and at **her** request and in the
presence of each other; that the said testat **rix** signed, published and declared the said Instrument as and
for h **er** last Will and Testament in our presence on the **31st** day of **July** A. D, 19 56 ;
and at the time of execution of said will, said testatrix was more than eighteen years of age and of
sound mind, memory and judgment and under no improper influence or restraint to the best of our
knowledge and belief, and we make this affidavit at the request of said testat

Charles H. Lapointe

...................... ... ....... .... . ... .

...................... .. ... .. .. . . . . .. .. ..

State of Connecticut,   } ss.           A D., 19

County of       }

   Then personally appeared before me             duly qualified to
administer oaths,

... . . ... . .. . .

.... ......... ............. ............ ... ...................... . ..

and     ......... .. ..... ...
and subscribed and made oath to the truth of the foregoing affidavit.

........................ ...... ..................... ...... ..... .
*Notary Public*
*Justice of Peace*
*Commissioner of the Superior Court*