LEVIN, J.
 

 On January 28, 1993, at twenty-two years of age, Carmen Martinez Garrett died of breast cancer, leaving a husband (the defendant), and two young daughters, Sheila, then four years of age and Karmen, then two years of age. The defendant is the father of these children. On April 8, 1993, the maternal aunt of the children, Gloria Castillo (the plaintiff), filed petitions with the Probate Court seeking the removal of
 
 *172
 
 the defendant as guardian of the children and requesting that she be appointed guardian in his stead. After hearings, the Probate Court granted the petitions. The defendant appealed to this court.
 

 Because a record was not made of the proceedings in the Probate Court, the appeal to this court “is not so much an ‘appeal’ as a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court’s jurisdictional limitations.”
 
 Gardner
 
 v.
 
 Balboni,
 
 218 Conn. 220, 225, 588 A.2d 634 (1991); see General Statutes § 45a-186.
 
 [1]
 
 In a trial de novo, this “court exercises the right to make an independent . . . determination of the issue involved, without regard to the result reached by the Probate Court.
 
 Prince
 
 v.
 
 Sheffield,
 
 158 Conn. 286, 259 A.2d 621 (1969).”
 
 Bristol
 
 v.
 
 Brundage,
 
 24 Conn. App. 402, 407, 589 A.2d 1 (1991).
 

 The present case involves the removal of a parent as guardian of his children. “ ‘Guardian’ means one who has the authority and obligations of ‘guardianship’ . . . .” General Statutes § 45a-604 (6). For purposes of chapter 802h of the General Statutes, the statutory scheme implicated in these proceedings, “ ‘[guardianship’ means guardianship of the person of a minor, and includes: (A) The obligation of care and control; and (B) the authority to make major decisions affecting the minor’s welfare, including, but not limited to, consent
 
 *173
 
 determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment . . . .” General Statutes § 45a-604 (5). “The father and mother of every minor child are joint guardians of the person of the minor .... If either father or mother dies . . . the other parent of the minor child shall become the sole guardian of the person of the minor.” General Statutes § 45a-606. The court may remove a parent as guardian only if it finds by clear and convincing evidence that one or more of the grounds enumerated in General Statutes § 45a-610
 
 [2]
 
 have been proven by clear and convincing evidence.
 
 [3]
 
 The plaintiffs petition alleged the existence of two of these grounds, § 45a-610 (2) and (3).
 

 
 *174
 
 An appeal from an order of the Probate Court removing a parent as guardian “carrie[s] the subject matter embraced in it to the Superior Court, sitting as a Probate Court, for a trial de novo. . . . The primary jurisdiction over the removal of the [defendant] as a guardian . . . rest[s] with the Probate Court. . . . While the Superior Court could, on appeal, review the order of the Probate Court, it [can] not exercise any greater powers than the Probate Court.” (Citations omitted.)
 
 Stevens’ Appeal,
 
 157 Conn. 576, 581, 255 A.2d 632 (1969).
 

 In a de novo appeal from the Probate Court, “the Superior Court may not consider events transpiring after the Probate Court hearing;
 
 Satti
 
 v.
 
 Rago,
 
 186 Conn. 360, 369, 441 A.2d 615 (1982); [although] it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered.”
 
 Gardner
 
 v.
 
 Balboni,
 
 supra, 218 Conn. 225.
 
 [4]
 
 The evidence thus
 
 *175
 
 presented to this court supports the following findings. Carmen Martinez and the defendant were high school students in Bridgeport, when they began dating. Carmen was one year ahead of the defendant. After Carmen’s graduation from high school, she entered college in New York. She and the defendant continued to see each other. In her first year of college, Carmen became pregnant by the defendant. She dropped out of college for financial reasons, and the two were married on May 17, 1988. On September 11, 1988, Sheila Krystle Garrett was born.
 

 In early 1989, the Garretts moved to Detroit, Michigan, where the defendant’s family resided. The Garretts lived with the defendant’s mother. Both husband and wife obtained employment in Detroit, the defendant as a self-employed home improvement contractor for which he has a Michigan journeyman’s license. The couple purchased a blighted house for the amount of the outstanding taxes and began to refurbish it. In 1989, Carmen noticed a lump in her right breast. She sought to have the condition diagnosed at the Park Medical Center in Detroit. The condition was diagnosed as a benign mastitis and cystic change.
 

 In late 1989 or early 1990, Carmen became pregnant with her second child. During that pregnancy it was discovered that her right breast was cancerous. Carmen’s mother and certain other family members traveled from Bridgeport to Detroit to be with her at this time. On August 27, 1990, Carmen underwent a mastectomy of her right breast. The following day she gave birth to Karmen Milagros Garrett.
 

 
 *176
 
 Soon after the birth of her second child Carmen returned to Bridgeport with her mother and daughters so that she could obtain medical care at a hospital in New York City. The defendant remained in Detroit. Sometime after returning to Connecticut with her children, Carmen rented an apartment and obtained employment as a bank teller. In March or April of 1991, she underwent a bone marrow transplant operation. Between the time that Carmen returned to Connecticut and the time of her death, a period of over two years, the defendant would visit her and the children from time to time. On these visits, the defendant would sometimes stay with his wife but would often stay at hotels. Sometimes he would bring toys for the children. He purchased a television and video cassette recorder for his wife. He gave her little or no money, however, during the entire time she resided in Connecticut. Carmen and the children were without plates, towels and sheets. There was little food in the apartment and no washing machine. On at least one occasion, Carmen’s fellow employees at the bank purchased groceries for her. Her sister purchased a washing machine for her. In 1992, after the defendant refused to pay her support, she was required to apply for and did receive state welfare benefits. Eventually, a petition was brought on her behalf for support of the children pursuant to the Uniform Reciprocal Enforcement of Support Act, General Statutes § 46b-180 et seq. This resulted in an order of support being entered against the defendant by the Circuit Court of the state of Michigan on January 11,1993.
 

 In February, 1991, Carmen brought suit in Michigan against the Michigan Health Care Corporation and Park Medical Centers for the negligent misdiagnosis of the lump in her right breast in 1989. On May 7, 1992, that lawsuit was settled in consideration of the defendants paying $130,000 to Carmen and $105,000 to each of her daughters. The settlement agreement also provided for
 
 *177
 
 substantial monthly payments to the children for seventeen years.
 

 Toward the end of 1992, Carmen’s health again began to deteriorate. She reentered the hospital in New York City where the defendant visited her and the children. During her hospitalizations, the children were cared for by Carmen’s mother or by her sisters. On January 28, 1993, she died. The defendant was present for her funeral but left immediately thereafter, without his children, explaining that he was emotionally overwrought. In March, 1993, the defendant took the children back to Detroit for six weeks. Shortly after he returned the children, the plaintiff filed these petitions seeking the removal of the defendant as guardian.
 

 The first ground of the plaintiffs petition is that the minor children have been abandoned by the defendant father “in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor’s welfare.” General Statutes § 45a-610 (2). “The statutory definition differs from the common law concept of abandonment wherein an intent to abandon totally and permanently must be proved.”
 
 In re Shannon S.,
 
 41 Conn. Sup. 145, 151, 562 A.2d 79 (1988), affirmed and adopted, 19 Conn. App. 20, 560 A.2d 993 (1989) (construing General Statutes [Rev. to 1987] § 17-43a, now codified as § 17a-112); compare
 
 Glotzer
 
 v.
 
 Keyes,
 
 125 Conn. 227, 233, 5 A.2d 1 (1939) (at common law “[t]o constitute abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such intention is manifested”). “Where the legislature has specifically defined an operative term used within a statute, [courts] are bound to accept that definition . . . unless to do so would create an irrational result that could not have been intended by the legislature.” (Citation omitted.)
 
 Weinberg v. ARA Vending Co.,
 
 223 Conn. 336, 349, 612 A.2d 1203 (1992).
 

 
 *178
 
 General Statutes § 45a-610 has not been subjected to judicial scrutiny according to officially reported case law. The phrase “failed to maintain a reasonable degree of interest, concern or responsibility for the minor’s welfare” is, however, substantially similar to provisions in General Statutes § 45a-717 and General Statutes § 17a-112, pertaining to the termination of parental rights.
 
 [5]
 
 Because §§ 17a-112 and 45a-717, as well as § 45a-610, all deal with judicial interference with parental
 
 *179
 
 rights, the court may look to the former for guidance in the construction of the latter since the legislature is presumed to have created a consistent body of law.
 
 State
 
 v.
 
 Giorgio,
 
 2 Conn. App. 204, 209, 477 A.2d 134 (1984).
 

 Construing § 17a-112, our appellate courts have stated that “[abandonment focuses on the parent’s conduct.”
 
 In re Juvenile Appeal (Docket No. 9489),
 
 183 Conn. 11, 14, 438 A.2d 801 (1981); see
 
 In re Michael M.,
 
 29 Conn. App. 112, 121, 614 A.2d 832 (1992);
 
 In re Rayna M.,
 
 13 Conn. App. 23, 36, 534 A.2d 897 (1987). “Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child.
 
 In re Luke G.,
 
 40 Conn. Sup. 316, 323, 498 A.2d 1054 (1985). . .
 
 .In re Michael M.,
 
 supra [121], Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child’s welfare.
 
 *180
 

 In re Juvenile Appeal (Docket No. 9489),
 
 [supra, 14].” (Internal quotation marks omitted.)
 
 In re Kezia M.,
 
 33 Conn. App. 12, 17-18, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).
 

 Section 45a-610, like “[§] 17a-112 (b) (1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern.
 
 ... In re Michael M.,
 
 supra, [29 Conn. App. 112];
 
 In re Rayna M.,
 
 supra, [13 Conn. App.] 37-38;
 
 In re Migdalia M.,
 
 6 Conn. App. 194, 208-209, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).” (Internal quotation marks omitted.)
 
 In re
 
 Kezia M., supra, 33 Conn. App. 18.
 

 “The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.
 
 In re Juvenile Appeal (Docket No. 9489),
 
 supra, [183 Conn.] 15, quoting
 
 In re Adoption of Webb,
 
 14 Wash. App. 651, 657, 544 P.2d 130 (1975).” (Internal quotation marks
 
 omitted)In re Kezia M.,
 
 supra, 33 Conn. App. 18.
 

 The plaintiff and the guardian ad litem both argue that a finding of abandonment is supported by the defendant’s failure to visit his children with sufficient frequency after they moved with their mother from Detroit to Bridgeport. The evidence of the frequency of the defendant’s visits was conflicting. Evidence of the defendant’s failure to telephone and to write to his children was lacking. It was the plaintiffs burden to prove the allegations of her petition.
 
 In re Juvenile
 
 
 *181
 

 Appeal (83-CD),
 
 189 Conn. 276, 296, 455 A.2d 1313 (1983);
 
 In re Juvenile Appeal (84-3),
 
 1 Conn. App. 463, 467, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). While the defendant was not a credible witness, the court finds that the plaintiff has not proved that the defendant failed to maintain sufficient contact with his children.
 

 The plaintiff and the guardian ad litem also claim that the defendant failed to discharge his financial responsibility to support his children after they moved to Connecticut. The court agrees and does not credit the defendant’s testimony to the contrary. The defendant failed to provide his wife with any significant funds for the support of his children after the move back to Connecticut. This case is unlike
 
 In re Luke G.,
 
 supra, 40 Conn. Sup. 323, in which “the defendant ha[d] been chronically in arrears on child support . . . .” Rather, here, the defendant virtually abdicated his duty to support his daughters. His purchase of a television and a video cassette recorder and his bringing a few toys to his children over a two year period does not excuse such a neglect of duty. Cf.
 
 In re King’s Estate,
 
 111 Okla. 291, 292, 239 P. 234 (1925) (gifts not real and substantial part of maintenance and support). Moreover, the defendant had adequate means to provide support to his children. “The extent to which specific parents should be held to the performance of all or some of the . . . obligations [of parenthood] depends in large part on the particulars of a given case. In characterizing statutory abandonment, the Supreme Court; has emphasized that the focus is on the parent’s conduct and that the question is one of fact to be resolved by the trial court in the light of relevant circumstances.
 
 In re Juvenile Appeal (Docket No. 9489),
 
 supra, [183 Conn.] 14.”
 
 In re Shannon S.,
 
 supra, 41 Conn. Sup. 151. Notably, both the defendant and his wife came from solidly middle-class, working families. The defendant is a home
 
 *182
 
 improvement contractor, specializing in the restoration of older or historic homes. He was not without work. Indeed, he stated that he was concerned that the frequency of his visits to Connecticut might cause him to lose work. He could have and should have supported his children. He clearly did not do so.
 
 [6]
 

 Whether a finding of statutory abandonment may be predicated on proof that the parent failed to discharge only one of the obligations of parenthood, and specifically the duty to support, is an issue that has not been squarely addressed either by our appellate courts or by the parties in the present case. The question is one of legislative intent. “We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature.
 
 State
 
 v. Kozlowski, 199 Conn. 667, 673, 509 A.2d 20 (1986);
 
 Hayes
 
 v.
 
 Smith,
 
 194 Conn. 52, 57, 480 A.2d 425 (1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.” (Internal quotation marks omitted.)
 
 Ambroise
 
 v.
 
 William Raveis Real Estate, Inc.,
 
 226 Conn. 757, 764, 628 A.2d 1303 (1993).
 

 First, with respect to the words of the statute, § 45a-610 (2) provides that a child is deemed abandoned by a parent if that “parent has failed to maintain a reasonable
 
 *183
 
 degree of interest, concern or responsibility for the minor’s welfare . . . .” While “interest” and “concern” may in some respects be synonyms for each other, they are not synonyms for “responsibility.” Compare
 
 Bordonaro
 
 v.
 
 Senk,
 
 109 Conn. 428, 430-31, 147 A. 136 (1929). In the sense employed in the statute, “interest” means “a feeling that accompanies or causes special attention to an object or class of objects: concern.” Webster’s Ninth New Collegiate Dictionary (1991); see, e.g.,
 
 Dana-Robin Corp.
 
 v.
 
 Common Council,
 
 166 Conn. 207, 213, 348 A.2d 560 (1974). “Concern” is defined as a “marked interest or regard usu[ally] arising through a personal tie or relationship.” Webster’s Ninth New Collegiate Dictionary (1991); see
 
 State
 
 v.
 
 Fico,
 
 147 Conn. 426, 430-31, 162 A.2d 697 (1960). “Responsibility” is defined as “the quality or state of being responsible: as a: moral, legal, or mental accountability b: reliability, trustworthiness.” Webster’s Ninth New Collegiate Dictionary (1991); see
 
 State
 
 v.
 
 Burney,
 
 189 Conn. 321, 326, 455 A.2d 1335 (1983). Notably, the statutory definition, which is binding on this court;
 
 Weinberg
 
 v.
 
 ARA Vending Co.,
 
 supra, 223 Conn. 349; employs the disjunctive “or.” In fact, § 45a-610 uses the word “or” twenty times. This repeated and nonaccidental use of the disjunctive “or” demonstrates that the legislature intended that any one default by a parent — whether it is a failure to maintain a reasonable degree of interest, or to maintain a reasonable degree of concern, or, as here, to maintain a reasonable degree of responsibility for the child’s welfare — may warrant removal of the parent as guardian. Cf.
 
 John A. Errichetti Associates
 
 v.
 
 Boutin,
 
 183 Conn. 481, 489, 439 A.2d 416 (1981);
 
 Horak
 
 v.
 
 Middlesex Mutual Assurance Co.,
 
 181 Conn. 614, 617, 436 A.2d 783 (1980).
 

 Second, while the legislative history and circumstances surrounding the enactment of § 45a-610 and the statutory scheme of which it is a part are silent on the
 
 *184
 
 issue before the court,
 
 [7]
 
 the legislative policy of the statute is clearly expressed by the legislature itself. General Statutes § 45a-605 (a) provides: “The provisions of sections 45a-603 to 45a-622, inclusive, shall be liberally construed in the best interests of any minor child affected by them, provided the requirements of such sections are otherwise satisfied.” This is a “clear” statement by the legislature that in any proceeding to remove a parent as guardian “the crucial issue is the best interest of the child.”
 
 McGaffin
 
 v.
 
 Roberts,
 
 193 Conn. 393, 406-407, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). Notably, §§ 17a-112 and 45a-717, which govern the termination of parental rights, are not prefaced by such a declaration of legislative policy. Cf.
 
 In re Baby Girl B.,
 
 224 Conn. 263, 280, 618 A.2d 1 (1992). Thus, “[a]lthough a ‘best interests of the child’ analysis is irrelevant in determining whether an ‘ongoing parent-child relationship’ exists,” in a proceeding to terminate parental rights, “it is relevant, and perhaps dispositive ... in any proceeding to transfer guardianship.”
 
 In re Jessica M.,
 
 217 Conn. 459, 475, 586 A.2d 597 (1991). The best interests of the child militate that the statute be interpreted as it is written, so that a parent may be removed as guardian, notwithstanding that he or she has maintained a reasonable degree of interest or concern for a minor’s welfare, where the parent nonetheless “has failed to maintain a reasonable degree of . . . responsibility for the minor’s welfare . . . .” General Statutes § 45a-610 (2).
 

 Third, with respect to the “relationship [of § 45a-610] to existing legislation and common law principles governing the same subject matter”;
 
 Ambroise
 
 v.
 
 William Raveis Real Estate, Inc.,
 
 supra, 226 Conn. 764; General Statutes § 46b-37 (b) provides that “it shall be
 
 *185
 
 the joint duty of each spouse to support his or her family . . . .” With respect to the duty of the father, this statute is declaratory of the common law.
 
 White
 
 v.
 
 White,
 
 138 Conn. 1, 5, 81 A.2d450 (1951). In the context of marriage dissolutions, General Statutes § 46b-56 (b) provides in pertinent part: “In making or modifying any order with respect to custody . . . the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child
 

 General Statutes § 46b-56b provides: “In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody.” “The presumption, which is one of public policy, places upon the nonparent ‘the burden of proving sufficient facts to put the presumed fact [that it is in the best interest of the child to be in the custody of the parent] into issue.’
 
 Anderson
 
 v.
 
 Litchfield,
 
 4 Conn. App. 24, 28, 492 A.2d 210 (1985). The presumption . . . makes that burden easier to sustain because it gives the parent an initial advantage.”
 
 Evans
 
 v.
 
 Santoro,
 
 6 Conn. App. 707, 711 n.3, 507 A.2d 1007 (1986). However, “[t]he ‘best interests’ standard remains the ultimate basis of a court’s custody decision.”
 
 Busa
 
 v.
 
 Busa,
 
 24 Conn. App. 426, 429, 589 A.2d 370 (1991). It would not comport with the best interests of the children here to construe “or” other than in accordance with its plain and natural meaning. Nor would it subserve such interests to allow a parent, who
 
 *186
 
 has abdicated to such an extent his continuing duty to provide financial support, to remain as the guardian of the children. In the interpretation of statutes, “we follow the ‘golden rule of statutory interpretation’; 2A J. Sutherland, [Statutory Construction (4th Ed. Sands)] § 45.12, p. 54; that the legislature is presumed to have intended a reasonable, just and constitutional result.”
 
 Sanzone
 
 v.
 
 Board of Police Commissioners,
 
 219 Conn. 179, 187, 592 A.2d 912 (1991). These statutes are especially telling since custody is usually the principal attribute of guardianship of a minor child.
 

 Moreover, at common law a guardian could be removed for any good and sufficient cause. 39 Am. Jur. 2d, Guardian and Ward § 58 (1968). It is a settled rule of statutory construction that “ ‘[n]o statute is to be construed as altering the common law, farther than its words import.’ ”
 
 Dennis
 
 v.
 
 Shaw,
 
 137 Conn. 450, 452, 78 A.2d 691 (1951); see
 
 Yale University School of Medicine
 
 v.
 
 Collier,
 
 206 Conn. 31, 37, 536 A.2d 588 (1988).
 

 Finally, where the legislature has intended that the duties of a parent be considered in the conjunctive, it has expressly said so. General Statutes § 45a-617, entitled “[appointment of guardian of the person of a minor,” provides in pertinent part: “When appointing a guardian of the person of a minor, the court shall take into consideration . . . [t]he ability of the prospective guardian to meet, on a continuing day to day basis, the physical, emotional, moral
 
 and
 
 educational needs of the minor . . . .” (Emphasis added.) This is further evidence of the legislature’s intent to fashion a consistent body of law. The intent of that body is that a parent may be removed for failure to meet any one of the specified needs of the child, and that in appointing a subsequent guardian, the court must take into consideration the ability of the prospective guardian to meet
 
 all
 
 of the needs of a child.
 

 
 *187
 
 The court is cognizant that “under the maxim of ‘noscitur a sociis,’ the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated”;
 
 Staples
 
 v.
 
 Paiten,
 
 214 Conn. 195, 199, 571 A.2d 97 (1990); and that it is “abandoned,” a word with a strong connotation, which the legislature chose to have qualified by the definition in § 45a-610 (2). Nonetheless, application of the other foregoing principles of statutory construction persuades the court that the legislature intended that abdication by a parent of the duty to support his or her child, that is, abdication of financial responsibility, may warrant the removal of that parent as guardian, notwithstanding that the parent has maintained contact and “interest” in the child’s welfare. Accordingly, the court finds that the plaintiff has proved by clear and convincing evidence that the defendant abandoned his children “in the sense that [he] has failed to maintain a reasonable degree of . . . responsibility for [their] welfare.”
 

 The plaintiff also alleges that the defendant should be removed as the children’s guardian pursuant to § 45a-610 (3). That provision provides that a parent may be removed as a guardian if the court finds by clear and convincing evidence that “the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being . . . whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at this time . . . .”
 

 The word “care” is not defined in the statute. In such circumstances “[t]he words of a statute are to be given their commonly approved meaning unless a contrary
 
 *188
 
 intent is clearly expressed.”
 
 Kilpatrick
 
 v.
 
 Board of Education,
 
 206 Conn. 25, 28, 535 A.2d 1311 (1988). “Care” includes support and maintenance. Bailentine’s Law Dictionary (3d Ed. 1969); see
 
 Harlan
 
 v.
 
 Harlan,
 
 154 Cal. 341, 349, 98 P. 32 (1908);
 
 In re King’s Estate,
 
 supra, 111 Okla. 292;
 
 Bruce
 
 v.
 
 McIntosh,
 
 57 Okla. 774, 776, 159 P. 261 (1916). The court already has found that the defendant failed to support his children. The statute, however, requires more. The statute requires a finding that “the minor child has been
 
 denied
 
 the care, guidance or control
 
 necessary for his or her physical,
 
 educational, moral or emotional
 
 well-being,
 
 as a result of acts of parental commission or omission . . . .’’(Emphasis added.) General Statutes § 45a-610 (3).
 

 As discussed earlier, the apartment in which the children and their mother dwelled in Bridgeport was without food, plates, towels and sheets. While no witness surveyed the apartment daily for these items to determine whether this condition ensued for a particular period of time, “[c]ourts must necessarily rely on circumstantial evidence in many cases and may draw reasonable and logical inferences from facts existing prior to or subsequent to an event for the purpose of reaching a conclusion of fact.”
 
 Shaughnessy
 
 v.
 
 Morrison,
 
 116 Conn. 661, 664, 165 A. 553 (1933). “The law does not distinguish between direct and circumstantial evidence as far as probative force is concerned.”
 
 In re Juvenile Appeal (85-2),
 
 3 Conn. App. 184, 193, 485 A.2d 1362 (1985). “Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case such as this where the applicable standard is that of clear and convincing proof.” Id. It is especially telling that there was compelling evidence that the defendant’s wife was so needy that fellow workers at the bank at which she was employed had to purchase food for her and her children. Food, of course, is necessary for the
 
 *189
 
 physical, if not emotional, well-being of a child.
 
 State
 
 v.
 
 Kelly,
 
 100 Conn. 727, 730, 125 A. 95 (1924);
 
 State
 
 v.
 
 Moran,
 
 99 Conn. 115, 119, 121 A. 277 (1923). By clear and convincing evidence, the court finds that the defendant’s children were denied the care necessary for their physical well-being as a result of acts of parental omission, to wit, the defendant’s failure to support his children.
 

 Moreover, the court finds that the defendant’s “parental acts or deficiencies” support the conclusion that he should not, in the children’s best interests, be their guardian at this time, based on the evidence of events transpiring up to the dates of the Probate Court hearings.
 
 [8]
 
 The defendant’s refusal or inability to recognize that his failure to support his family financially would visit hardship on them, his demeanor while testifying, his unnecessary expenditures of large sums of money for hotel lodging on his visits to Connecticut when he could have stayed with his wife and children, his obsessive videotaping of everything around him, including his children, and his selfish departure from his children immediately after their mother’s funeral is clear and convincing evidence that the defendant was not, as of the date of the Probate Court hearings, of sufficient maturity and responsibility to assume the burdens and duties of a parent and guardian.
 
 [9]
 

 
 *190
 
 The petitions are granted. Based on the evidence before the court, the plaintiff is appointed temporary guardian of the children pending a hearing as to whether any other person should serve as guardian.
 
 [10]
 
 The defendant shall be afforded reasonable visitation with his children, the specific terms of which shall be determined by the court after a hearing if counsel for the plaintiff, the defendant and the guardian ad litem are unable to agree thereon. See General Statutes § 45a-612.
 
 [11]
 

 [1]
 

 General Statutes § 45a-186 provides in relevant part: “Appeals from probate. Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held .... Except in the case of an appeal by the state, such person shall give security for costs in the amount of one hundred fifty dollars, which may be paid to the clerk, or a recognizance with surety annexed to the appeal and taken before the clerk or a commissioner of the superior court or a bond substantially in accordance with the bond provided for appeals to the supreme court. Appeals from any decision rendered in any case after a record is made under sections 51-72 and 51-73 shall be on the record and shall not be a trial de novo.”
 

 [2]
 

 General Statutes § 45a-610 provides: “Removal of parent as guardian. If the court of probate finds that notice has been given or a waiver has been filed, as provided in section 45a-609, it may remove a parent as guardian, if the court finds by clear and convincing evidence one of the following:
 

 (1) The parent consents to his or her removal as guardian; or (2) the minor child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor’s welfare; or (3) the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at this time; or (4) the minor child has had physical injury or injuries inflicted upon him by a person responsible for such child’s health, welfare or care, or by a person given access to such child by such responsible person, other than by accidental means, or has injuries which are at variance with the history given of them or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment. If, after removal of a parent as guardian under this section, the child has no guardian of his person, such a guardian may be appointed under the provisions of section 45a-616.”
 

 [3]
 

 “According to some legal scholars, there are only three categories of the degrees of proof. They are (1) the fact in issue probably has happened;
 

 (2) it is highly probable that the fact in issue has happened; and (3) the fact in issue has most certainly happened. McBaine, ‘Burden of Proof: Degrees of Belief,’ 32 Calif. L. Rev. 242, 246-47 (1944). There are three measures of
 
 *174
 
 persuasion: proof by a preponderance of the evidence; proof by the stricter standard such as ‘clear and convincing’; and proof beyond a reasonable doubt. See 9 Wigmore, Evidence (3d Ed.) §§ 2497, 2498.”
 
 Clark
 
 v.
 
 Drska,
 
 1 Conn. App. 481, 487, 473 A.2d 325 (1984). Clear and convincing evidence “is a degree of belief that is between the belief required in the average civil case and the belief of guilt beyond a reasonable doubt required in a criminal action. Such a burden of persuasion requires a reasonable belief that ‘the facts asserted are highly probably true [or] that the probability that they are true ... is substantially greater than the probability that they are false . . . .’
 
 Lopinto
 
 v.
 
 Haines,
 
 [185 Conn. 527, 534, 441 A.2d 151 (1981)] . . . .” Id.
 

 [4]
 

 At the inception of the trial of the present case, the court erroneously allowed evidence of events transpiring subsequent to the filing of the petitions. After the error was recognized, the court allowed such evidence to be introduced, substantively, only for the limited purpose of determining whether the plaintiff would be an appropriate guardian if the defendant were removed as guardian. General Statutes § 45a-610 provides in pertinent part: “If, after removal of a parent as guardian under this section, the child has no guardian of his person, such a guardian may be appointed under the provisions of section 45a-616.” General Statutes § 45a-616 (a) provides, inter alia: “If any minor has no parent or guardian of his or her person, the court . . . may, on its own motion, appoint a guardian or coguardians of the person of the minor, taking into consideration the standards provided in section 45a-617.” General Statutes § 45a-617 provides: “When appointing a guardian of the person of a minor, the court shall taire into consideration
 
 *175
 
 the following factors: (1) The ability of the prospective guardian to meet, on a continuing day to day basis, the physical, emotional, moral and educational needs of the minor; (2) the minor’s wishes, if he or she is of sufficient maturity and capable of forming an intelligent preference; and (3) the existence or nonexistence of an established relationship between the minor and the prospective guardian.”
 

 [5]
 

 General Statutes § 17a-112 (b) provides with respect to the termination of parental rights: “The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1)
 
 The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;
 
 or (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Non-accidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child.” (Emphasis added.)
 

 General Statutes § 45a-717 (f) provides: “At the adjourned hearing or at the initial hearing where no investigation and report has been requested, the court may approve the petition terminating the parental rights and may appoint a guardian of the person of the child, or if the petitioner requests, the court may appoint astatutory parent, if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that,
 
 *179
 
 with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time which, except as provided in subsection (g) of this section, shall not be less than one year: (1)
 
 The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;
 
 or (2) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (3) there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child.” (Emphasis added.)
 

 [6]
 

 Although the defendant and his wife were living apart during the time that he failed to support his children, it is significant that this is not a case in which the children had been committed to the custody of the state, or to a third party, by court order. Cf.
 
 In re Jessica
 
 M., 217 Conn. 459, 586 A.2d 597 (1991). In circumstances such as those that exist in the present case, the legal rights and obligations of each parent as guardian remain equal, even though they lived apart. Cf.
 
 Pfeiffer v.
 
 Pfeiffeir, 99 Conn. 154, 157, 121 A. 174 (1923).
 

 [7]
 

 See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1979 Sess., pp. 1514-19, 1556; 22 S. Proc., Pt. 10, 1979 Sess., pp. 3226-27; 22 H.R. Proc., Pt. 28, 1979 Sess., pp. 9699-9704.
 

 [8]
 

 As observed earlier, “the Superior Court may not consider events transpiring after the Probate Court hearing . . .
 
 Gardner
 
 v.
 
 Balboni,
 
 supra, 218 Conn. 225. The court’s file reflects that several hearings were held in the Probate Court in connection with these petitions, on and after May 13, 1993. The decision of the Probate Court is dated September 27,1993. While there is no evidence as to the date when the hearings ceased, it is unnecessary to pinpoint that exact date for purposes of these proceedings.
 

 [9]
 

 The plaintiff and the guardian ad litem also claim that the defendant would not be a morally fit guardian because of the shoplifting he had committed, his possession of unlicensed firearms, his discharge of a firearm in the home which Carmen shared with her sister and daughter and his failure to file income tax returns. While these acts are disturbing to say the least, and symptomatic of the defendant’s immaturity and irresponsibility, there is no evidence relating them to any ground in § 45a-610 for his removal
 
 *190
 
 as guardian. Specifically, the court cannot find, based on these incidents, that the children were “denied the care, guidance or control necessary for [then] . . . moral or emotional well-being . . . .” General Statutes § 45a-610 (3).
 

 [10]
 

 At the hearing on the petition, the court heard evidence of matters occurring subsequent to the date of the hearings before the Probate Court for the limited purpose of determining the plaintiffs fitness to serve as guardian should the petitions be granted. See footnote 4 of this opinion. Because of time and scheduling constraints, the court was unable, at that time, to hear evidence as to the fitness of anyone else to serve in that capacity.
 

 [11]
 

 General Statutes § 45a-612 provides: “Visitation rights of parent removed as guardian. The court of probate may grant the right of visitation to any person who has been removed as guardian of any minor child or children, any relative of the minor child or children or any parent who has been denied temporary custody of any minor child or children pending the hearing on a removal or termination of parental rights application pursuant to the provisions of sections 45a-132, 45a-593 to 45a-597, inclusive, 45a-603 to 45a-622, inclusive, and 45a-629 to 45a-638, inclusive. Such order shall be according to the best judgment of the court upon the facts of the case and subject to such conditions and limitations as it deems equitable. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child, and any such court may include in its decree an order terminating such visitation rights.”