******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE C. Y.*
## (AC 47852)

Alvord, Cradle and Suarez, Js.**

*Syllabus*

The respondent father appealed from the trial court's judgment removing him as guardian of his minor child and appointing the petitioners as coguardians of the child. The respondent claimed that the court abused its discretion in determining, pursuant to statute (§ 45a-610 (3)), that there was clear and convincing evidence to support its finding that the ground for removal of the respondent's guardianship rights had been satisfied. *Held*:

The trial court did not abuse its discretion in removing the respondent as guardian of the child, as the record contained sufficient evidence to support the court's finding that the petitioners proved by clear and convincing evidence that the statutory ground for removal of the respondent as guardian pursuant to § 45a-610 (3) and the best interests of the child standard pursuant to statute (§ 45a-605) had been satisfied.

Argued January 14—officially released March 24, 2025***

*Procedural History*

Petition to remove the respondent as guardian of his minor child, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, and tried to the court, *Hoffman, J.*; judgment removing the respondent as guardian of his minor child and appointing the petitioner Cindy W. et al. as coguardians, from which the respondent appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** March 24, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*David E. Schneider, Jr.*, assigned counsel, for the appellees (petitioner Cindy W. et al.).

*Ellin M. Grenger*, attorney for the minor child.

*Opinion*

SUAREZ, J. The respondent father, Carl Y., appeals from the judgment of the trial court rendered in favor of the petitioners, his sister, Cindy W. (Cindy), and her husband, Jacob W. (Jacob),[1] removing the respondent as guardian of his minor child, C. Y., and appointing the petitioners as coguardians of the child.[2] On appeal, the respondent claims that the court abused its discretion in determining that there was clear and convincing evidence to support its finding that the statutory ground for the removal of the respondent's guardianship rights had been satisfied.[3] We affirm the judgment of the court.

The record reveals the following undisputed facts and procedural history. The child was born in November, 2007, to the respondent and Chelsea C. (Chelsea), who were married at the time. The respondent and Chelsea divorced in 2010, and the respondent became the custodial parent of the child. The respondent married Kimberly Y. (Kimberly) in December, 2017, and the respondent, Kimberly, and the child began living in the same household.

In May, 2020, the respondent and Kimberly asked the petitioners to assume temporary guardianship of the child. The petitioners agreed, and the child, then age twelve, began to live with them around Mother's Day,

---

[1] All references herein to the petitioners are to Cindy and Jacob collectively, and we refer to them individually by first name when appropriate.

[2] The petitioners did not seek to remove the child's mother, Chelsea C., as guardian of the child, and she is not participating in this appeal. All references in this opinion to the respondent are to Carl Y. only.

[3] Pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief of the petitioners in this appeal.

2020. On May 23, 2020, the petitioners and the respondent entered into a voluntary agreement for the temporary guardianship of the child. On October 7, 2020, the Probate Court granted the petitioners temporary guardianship of the child for one year. After the expiration of the court order, the child remained in the care and custody of the petitioners. On December 31, 2021, the petitioners and the respondent entered into a second voluntary agreement concerning the temporary guardianship of the child (December 31, 2021 agreement), which, inter alia, provided for the respondent to provide the petitioners with $100 per month in child support. On February 17, 2022, the respondent filed a second application with the Probate Court to renew the petitioners' guardianship of the child, which was granted on March 15, 2022.

On March 24, 2022, the petitioners and the child were planning to travel to New Hampshire for a long weekend. The respondent initially did not object to the trip. That night, however, the respondent arrived at the petitioners' home and demanded that the child have visitation with him instead. When the child refused to go with the respondent, he handed the petitioners a notarized letter purporting to terminate their agreement for the temporary guardianship of the child. The police were summoned but would not compel the child to go with the respondent against her will. On March 25, 2022, the petitioners filed two petitions in the Probate Court: one for immediate temporary custody of the child and one for removal of the respondent as the child's guardian. The petition for removal alleged acts of parental commission or omission, pursuant to General Statutes § 45a-610 (3),[4] as the statutory basis for removal of the

---

[4] General Statutes § 45a-610 governs the removal of parents as guardians in probate proceedings and provides in relevant part: "If the Court of Probate finds that notice has been given or a waiver has been filed, as provided in section 45a-609, it may remove a parent as guardian, if the court finds by clear and convincing evidence one of the following: (1) The parent consents to his or her removal as guardian; or (2) the minor child has been abandoned

respondent as the child's guardian. The same day, the Probate Court granted immediate temporary custody of the child to the petitioners and scheduled a hearing on the petitioners' petition for the removal of the respondent's guardianship rights. On February 1, 2023, pursuant to General Statutes § 45a-623,[5] the respondent moved to transfer the petition for the removal of guardianship to the Superior Court. On April 25, 2024, the court, *Hoffman, J.*, held a hearing on the petition. On June 17, 2024, the court issued an oral decision in which it found "by clear and convincing evidence that the petitioners have proved . . . grounds for removal of [the respondent] as guardian, as to [§] 45a-610 (3) . . . ." The court further found by clear and convincing evidence "that the minor child has been denied the

by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility for the minor child's welfare; or (3) the minor child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, whether the acts are the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise, parental rights and duties at the time; or (4) the minor child has had physical injury or injuries inflicted upon the minor child by a person responsible for such child's health, welfare or care, or by a person given access to such child by such responsible person, other than by accidental means, or has injuries which are at variance with the history given of them or is in a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment; or (5) the minor child has been found to be neglected or uncared for, as defined in section 46b-120. . . ."

[5] General Statutes § 45a-623 provides in relevant part: "Before a hearing on the merits in any case under sections 45a-603 to 45a-622, inclusive, that is contested, the Probate Court shall, on the motion of any party other than a party who applied for the removal of a parent as a guardian . . . transfer the case to the Superior Court in accordance with rules adopted by the judges of the Supreme Court. . . . If the case is transferred and venue altered, the clerk of the Probate Court shall transmit to the clerk of the Superior Court . . . to which the case was transferred, the original files and papers in the case."

care, guidance, and control necessary for her physical, educational, moral, [and] emotional well-being as [a result] of acts of parental commission or omission whether the acts are the result of physical or mental incapacity of the parent or conditions attributable to the parental habits, misconduct, or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the minor child be permitted to exercise parental rights and duties at this time.

"So, the court's going to find that it's in the best interest of the child to do so. [The] court is basing that on the . . . review of the testimony in this matter. The court was very concerned about the allegations in . . . [Cindy's] description of [the child's] distress after she came to live with [the petitioners] concerning her studies, and the conditions which she was allowed to live under.

"And as far as the [discipline] situation was concerned, it . . . appears to the court that when [the respondent] was faced with a situation between his present wife and [the child], he chose his present wife over [the child]. And that was evident by the fact that . . . [his wife] indicated that it was her or [the child]. [The respondent] . . . recognized the abilities of the [petitioners] to be able to care for [the child].

"And [the child], in the court's opinion, is a remarkable young lady. In [the] face of everything, she was able to triumph and looks like she's doing very well in school. And the court feels that she needs to have going forward . . . some permanence in her life where she can consult with the [petitioners] as [to] her future decisions and know that they have final decision-making powers and that she is secure staying in their home." On the basis of these subordinate findings, the court

granted the petition to remove the respondent as guardian of the child and appointed the petitioners as coguardians of the child together with Chelsea. The court further ordered that the child's primary residence be with the petitioners and that the petitioners would have final decision-making authority over issues pertaining to the child. This appeal followed.

Before reaching the merits of the respondent's claim on appeal, we briefly set forth the governing legal principles. "Our courts of probate have a limited jurisdiction and can exercise only such powers as are conferred on them by statute." (Internal quotation marks omitted.) *In re Probate Appeal of Knott*, 190 Conn. App. 56, 61, 209 A.3d 690 (2019). After an application for the removal of a guardian is transferred from the Probate Court to the Superior Court, "the Superior Court sheds its status as a constitutional court of general jurisdiction and assumes the status of a statutory Probate Court of limited jurisdiction." *In re Probate Appeal of Buckingham*, 197 Conn. App. 373, 374, 231 A.3d 1261 (2020). "The court may remove a parent as guardian only if it finds by clear and convincing evidence that one or more of the grounds enumerated in . . . § 45a-610 [has] been proven by clear and convincing evidence." (Internal quotation marks omitted.) *In re Helen B.*, 50 Conn. App. 818, 827, 719 A.2d 907 (1998).

General Statutes § 45a-605 (a) provides in relevant part that "[t]he provisions of sections 45a-603 to 45a-622, inclusive, shall be liberally construed in the best interests of any minor child affected by them . . . ." This provision "is a clear statement by the legislature that in any proceeding to remove a parent as guardian the crucial issue is the best interest of the child. . . . Notably, [General Statutes] §§ 17a-112 and 45a-717, which govern the termination of parental rights, are not prefaced by such a declaration of legislative policy. . . . Thus . . . a best interests of the child analysis

. . . is relevant, and perhaps dispositive . . . in any proceeding to transfer guardianship. . . . The best interests of the child militate that the statute be interpreted as it is written, so that a parent may be removed as guardian, notwithstanding that he or she has maintained a reasonable degree of interest or concern for a minor's welfare, where the parent nonetheless has failed to maintain a reasonable degree of . . . responsibility for the minor's welfare . . . ." (Citations omitted; internal quotation marks omitted.) *Garrett's Appeal from Probate*, 44 Conn. Supp. 169, 182, 677 A.2d 1000 (1994), aff'd, 237 Conn. 233, 676 A.2d 394 (1996).

We take this opportunity to clarify our standard of review. The transfer of guardianship pursuant to § 45a-610 "is a matter within the sound discretion of the trial court. . . . We review the award to determine whether that discretion has been abused and whether the trial court, in the exercise of its discretion, has overlooked or misapplied some established principle of pertinent law." (Citations omitted; internal quotation marks omitted.) *In re Helen B.*, supra, 50 Conn. App. 827–28. We historically have reviewed for clear error both the court's subordinate factual findings and its determination by clear and convincing evidence that the statutory grounds for the removal of guardianship rights have been satisfied. See id., 827–29, 831. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 829.

In *In re Shane M.*, 318 Conn. 569, 122 A.3d 1247 (2015), our Supreme Court clarified the standard of review in child protection cases. It noted that clear error historically had been the standard of review for "both the trial court's subordinate factual findings and

its determination that a parent has failed to rehabilitate," and it "remain[ed] convinced that clear error review is appropriate for the trial court's subordinate factual findings . . . ." (Emphasis omitted.) Id., 587. However, it also recognized that "[a] conclusion of failure to rehabilitate is drawn from *both* the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy" the relevant statutory requirements. (Emphasis in original.) Id. Our Supreme Court determined that "the appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]." (Internal quotation marks omitted.) Id., 588. We recognize that the appeal in *In re Shane M.* was from a judgment terminating a respondent's parental rights pursuant to § 17a-112 and was not an appeal of a judgment granting a removal of guardianship pursuant to § 45a-610. Because the court's ultimate determination is similarly drawn from both its factual findings and its weighing of the facts to assess whether the relevant statutory requirements are satisfied, the standard articulated in *In re Shane M.* is equally applicable to actions pursuant to § 45a-610.

"Under [the evidentiary sufficiency standard of review], the inquiry is whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . [We do] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . In our

review of the record for evidentiary sufficiency, we are mindful that, as a reviewing court, [w]e cannot retry the facts or pass upon the credibility of the witnesses. . . . Rather, [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Citation omitted; internal quotation marks omitted.) *In re Caiden B.*, 220 Conn. App. 326, 348–49, 297 A.3d 1025, cert. denied, 348 Conn. 904, 301 A.3d 527 (2023).

With that standard of review in mind, we now turn to the respondent's claim that the evidence was insufficient to support the court's conclusion. Specifically, the respondent argues that the court only relied on Cindy's hearsay testimony, which was admitted without objection and described statements made by the child and Kimberly regarding events that occurred in May, 2020. The petitioners counter that "there was ample evidence [in the record] to support the . . . court's finding that the [respondent] should be removed as guardian . . . ." We agree with the petitioners.

It is well settled that "[e]vidence admitted without objection remains evidence in the case subject to any infirmities due to any inherent weaknesses. . . . A failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint as to the admission of the evidence. . . . If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have." (Citation omitted; internal quotation marks omitted.) *Dufresne* v. *Dufresne*, 191 Conn. App. 532, 546–47, 215 A.3d 1259 (2019). The weight to be given to such evidence "is solely within the province of the trial court." *Cotton* v. *Cotton*, 11 Conn. App. 189, 194, 526 A.2d 547 (1987). In the present case, the respondent did not object to the relevant portions of Cindy's hearsay testimony. The

court, therefore, in its discretion was entitled to rely on this evidence to the extent it deemed it persuasive.

In the present case, Cindy testified that the respondent and Kimberly had asked her and Jacob to assume temporary guardianship of the child in early May, 2020, and that they "said that they did not want [the child] back, that she was a liar, that . . . her behavior was awful. [The child] was constantly talking back to them and . . . Kim[berly] specifically said that if we take her, we are taking her until she is eighteen and that she is not allowed to come back to the house." Cindy further testified that the child did not begin to live with her until a few weeks later when the child and the respondent arrived at the petitioners' home after an argument with Kimberly. Cindy testified that, after their arrival, the respondent told her "that the argument was about [the child] and that Kim[berly] [could] no longer stand her in the home, and that it was either [Kimberly] or [the child] but it had to end. [The child] had to be removed."

Moreover, Cindy testified that, shortly after the child first came to stay with her, the child told her that "[s]he'd talked back to Kim[berly], and she was made to stand in the corner. And she would get up in the morning, and she would stand in the corner. They would eat breakfast. Once they were done, she could come out and eat breakfast. Then she would have to go stand back in the corner. And this repeated throughout the whole day for . . . each meal. And she said that went on for two to three weeks."

Cindy further testified that the respondent had only "[o]ccasionally," "[s]poradically," and "inconsistently" visited the child since the temporary guardianship began and stated that the respondent was invited to the child's eighth grade graduation ceremony, but he did not attend. Cindy further indicated that, despite the

December 31, 2021 agreement, the respondent, from the time that the child came to live with the petitioners until the hearing, gave the petitioners between only $400 and $600 in child support.

In addition, Cindy testified that, prior to the temporary guardianship, the child was seeing a counselor that "she loved and adored, and because of that fact, [the respondent] spoke to her and said she is not allowed to have somebody that she is comfortable with because she won't get what she needs out of it and switched her" to a different counselor. Cindy also testified that, in February, 2022, the child participated in an intake interview with Megan Renshaw, another counselor, and "at the intake [the respondent] and Kim[berly] were very adamant about being present in the room with [the child] while the counselor spoke to her. . . . [T]he counselor said no, initially, that she wanted to speak with [the child]. [The respondent and Kimberly] seemed very upset about that. [The respondent and Kimberly] also wanted [the child's] MyChart information,[6] and [the child] refused to give that to them. They got very upset about that as well." (Footnote added.) Cindy testified that when the petitioners tried to collaborate with the respondent on medical appointments, the respondent "would cancel them and set his own, so it was very difficult." In addition, the respondent would "[change] doctors" without informing the petitioners or consulting with the petitioners with respect to whether the child had a need for such an appointment.

Moreover, the court heard testimony from Aimee Arrowsmith, an investigator for the Department of Children and Families, who prepared an updated removal of guardianship study, dated May 11, 2023. In her study,

---

[6] MyChart is a patient portal system that allows for sending messages between a medical provider and a patient. See, e.g., *Schenarts* v. *Greenwich Hospital*, Docket No. CV-22-6114979-S, 2024 WL 3771530, *9 (Conn. Super. August 9, 2024).

Arrowsmith stated that, since the petitioners had assumed temporary guardianship of the child, the respondent had engaged in visitation "inconsistently." Arrowsmith further stated that while the child was still living with the respondent, the respondent had engaged in "discipline [that] was not appropriate for [the child], given her age at that time." Arrowsmith opined that "[i]t is unreasonable to make [the child] ([then age fifteen]) leave the home where she has had some stability in her life including school and in the community." Finally, Arrowsmith testified that the child "would like to remain where she is. She is doing very well there and is comfortable and feels safe there . . . ."

The court also heard testimony from the respondent. The respondent admitted that, since the temporary guardianship began in 2020, he had been arrested twice: once in April, 2021, which resulted in charges for breach of the peace in the second degree and threatening in the second degree, and again in August, 2022, for disorderly conduct. Additionally, when asked whether he was aware that temporary guardianships are supposed to last approximately one year, and expire accordingly, with the hope of reunification after, and whether he thought it was appropriate for the temporary guardianship to continue until the child reached the age of majority, the respondent said yes.

Construing the evidence in the manner most favorable to sustaining the judgment of the court, as we must, we conclude that the record contains sufficient evidence to support the court's finding that the petitioners proved by clear and convincing evidence that the statutory ground for removal of the respondent as guardian pursuant to § 45a-610 (3), as well as the best interests of the child standard of § 45a-605, had been satisfied. Accordingly, we conclude that the court did not abuse its discretion in removing the respondent as

guardian of the child and appointing the petitioners coguardians of the child.

The judgment is affirmed.

In this opinion the other judges concurred.